OPINION
{¶ 1} Cleveland McCalister is appealing the judgment of the Montgomery County Common Pleas Court, which convicted him of two counts of felonious assault.
 {¶ 2} On January 23, 2002, Mr. McCalister was indicted on two counts of felonious assault, which are felonies of the second degree, for events that occurred on October 18, 2001. On that date, Jeff Littlefoot and Gloria Smith were living together with her son. Additionally, Ernest Razor, Ms. Smith's brother, was staying with them. Mr. Razor and Mr. Littlefoot were at a home belonging to one of Mr. Razor's friends when JoAnn McKee arrived. A heated conversation occurred between Ms. McKee and either Mr. Littlefoot or Mr. Razor. Mr. Littlefoot and Mr. Razor then left the area and went to the home of Mr. Littlefoot and Ms. Smith. Soon Ms. Smith arrived, and they assisted her and her son with removing groceries from her car.
 {¶ 3} Ms. McKee pulled up in front of the house in her car with several other people. Mr. McCalister, who is Ms. McKee's son, and his friend, Ira Artemus, exited the rear of the vehicle and approached Mr. Littlefoot and Mr. Razor. According to Mr. Littlefoot, Mr. McCalister accused Mr. Razor of "fucking with [his] mother." (Tr. 33). Ms. Smith testified that Mr. McCalister had accused Mr. Razor of calling his mother a "bitch"and had made other accusations. (Tr. 63) Ms. Smith attempted to intervene, and Mr. McCalister either pushed or hit her and then struck Mr. Razor. Ms. Smith testified that she had then grabbed Mr. McCalister, who had then grabbed her and twisted her right arm. (Tr. 65) Ms. Smith testified that she had run to Ms. McKee in the car and asked her to stop the fighting, but Ms. McKee had refused. Mr. Littlefoot testified that Mr. Artemus had then tackled him. A series of blows ensued. During the scuffle, Mr. Littlefoot was knocked to the ground and was punched and kicked by Mr. McCalister, Mr. Artemus, and another man, later identified as Ricardo. Ms. Smith testified that she had seen Mr. McCalister kick Mr. Littlefoot in the head. Ms. Smith then ran and grabbed Mr. McCalister, who pushed her to the ground. Ms. Smith then grabbed Ricardo, who dragged her by the arm. (Tr. 67). Ms. Smith then ran into the street and picked up a rock; however, she did not strike anything with it, and the assailants left shortly after this.
 {¶ 4} As a result of the incident, Mr. Littlefoot received injuries to his eye, suffered severe pain, and was unable to work. Mr. Littlefoot suffered a fracture to the bones beneath his eye, and a corneal abrasion. Mr. Littlefoot had to obtain treatment from an ophthalmologist and was still in treatment at the time of the trial. Also, Ms. Smith suffered an injury to her arm, which required that the arm be placed in a cast. As a result of the injury, Ms. Smith was referred to a neurologist and an orthopedic specialist. Ms. Smith was forced to undergo physical therapy for her injury for two months after the incident.
 {¶ 5} At trial, Ms. McKee, Mr. Artemus, and Mr. McCalister also testified. The version of events they related differed in that they testified that Mr. McCalister had never made any contract with either Ms. Smith or Mr. Littlefoot. Instead, they testified that Mr. Littlefoot had been the instigator of the argument with Ms. McKee and the fight with Mr. Artemus and Mr. McCalister. Also, Mr. Artemus stated that it had been him who shoved Ms. Smith and also that he had struck Mr. Littlefoot, but only in self defense.
 {¶ 6} Mr. McCalister was indicted on the assault of Ms. Smith and the assault of Mr. Littlefoot. Both of the charges were second degree felonies. On April 18, 2002, a jury found Mr. McCalister guilty as charged, and he was subsequently sentenced to four years in prison. Mr. McCalister has filed this appeal from the convictions.
 {¶ 7} Mr. McCalister's first assignment of error is as follows:
 {¶ 8} "The Evidence To Support The First Count In The Indictment Was Insufficient As A Matter Of Law, And For That Reason The Conviction Should Be Reversed."
 {¶ 9} Mr. McCalister argues that the State presented insufficient evidence that it was he who injured Ms. Smith's arm. We disagree.
 {¶ 10} In reviewing a challenge to the sufficiency of the evidence, we must determine whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the State had proven the essential elements of the crime beyond a reasonable doubt. See State v. Jenks (1991), 61 Ohio St.3d 259,273, 574 N.E.2d 492.
 {¶ 11} Mr. McCalister argues that the State did not produce sufficient evidence that Ms. Smith's arm injury was caused by Mr. McCalister. The State presented the testimony of Ms. Smith regarding the incident. Ms. Smith testified that Mr. McCalister had grabbed and twisted her right arm. Further she testified that her right arm had been injured to such an extent that she had had to wear a cast and had lost the function of her arm for a period of time. Although Ms. Smith also testified that someone other than Mr. McCalister had dragged her by her arm, she did not specify which arm or discuss any pain associated with this action. Therefore, a reasonable juror was entitled to infer that Ms. Smith's injury to her right arm was caused by Mr. McCalister's grabbing and twisting her right arm, as she testified. A reasonable juror could have determined from this evidence that all of the essential elements of felonious assault for the incident against Ms. Smith were proven. Mr. McCalister's first assignment of error is without merit and is overruled.
 {¶ 12} Mr. McCalister also raises the following assignment of error:
 {¶ 13} "Because The Prosecution's Version Of The Facts Was Strongly Rebutted By The Defense's, The Conviction Should Be Reversed As Against The Manifest Weight Of The Evidence."
 {¶ 14} Mr. McCalister argues that his conviction is against the manifest weight of the evidence because he presented several witnesses who rebutted the prosecution's case. We disagree.
 {¶ 15} When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Martin, supra at 175. When reviewing a trial court's judgment under a manifest weight standard of review, "[j]udgment supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, 8 O.O.3d 261; Seasons Coal, Co.,Inc. v. City of Cleveland (1984), 10 Ohio St.3d 77, 80. A jury is entitled to believe or disbelieve any witness or accept part of what a witness says and reject the rest. State v. Antill (1964),176 Ohio St. 61, 67.
 {¶ 16} Mr. McCalister argues that the State's evidence was rebutted by the testimony of the defense witnesses, Ms. McKee, Mr. Artemus, and himself, to the extent that his conviction was against the manifest weight of the evidence. The defense witnesses testified that Mr. McCalister had struck neither Ms. Smith nor Mr. Littlefoot. Rather, the defense witnesses stated that Mr. McCalister had calmly come to Ms. Smith's house only to obtain a set of keys and that it had been an intoxicated Mr. Littlefoot and Mr. Razor who attacked him. However, the jury was entitled to disbelieve the testimony of Mr. McCalister, Ms. McKee, and Mr. Artemus. Ms. McKee is Mr. McCalister's mother, and Mr. Artemus testified that Mr. McCalister was like family. Clearly, Ms. McKee and Mr. Artemus did not want to see Mr. McCalister convicted of a crime. The jury could reasonably infer that the defense witnesses were biased and choose not to believe their testimony.
 {¶ 17} As for the assault to Ms. Smith, Ms. Smith testified that Mr. McCalister had grabbed and twisted her right arm and that she had subsequently had a severe injury to her right arm. Although Mr. McCalister, Ms. McKee, and Mr. Artemus testified that Mr. McCalister had not touched Ms. Smith, the jury was entitled to believe Ms. Smith's testimony rather than that of the defense witnesses. Ms. Smith's testimony amounts to competent, credible evidence supporting Mr. McCalister's conviction for felonious assault against Ms. Smith.
 {¶ 18} As for the assault on Mr. Littlefoot, the state also presented competent, credible evidence supporting Mr. McCalister's conviction. Ms. Smith specifically testified that she had seen Mr. McCalister kick Mr. Littlefoot in the head. (Tr. 66-67). The State also presented the testimony of a doctor treating Mr. Littlefoot, who stated that Mr. Littlefoot had had a corneal abrasion to his right eye, along with a fracture of the bones beneath his eye, and an inability to completely look up with his left eye. Although Mr. Artemus testified that he, rather than Mr. McCalister, had struck Mr. Littlefoot when Mr. Littlefoot had attacked him, the jury could reasonably decide not to believe the defense witnesses. All of the defense witnesses' testimony eliminated the possibility that Mr. McCalister could have injured Mr. Littlefoot, even accidentally. The jury could have reasonably rejected the defense witnesses' version of events and believed the testimony of Ms. Smith and Mr. Littlefoot. As Mr. McCalister's conviction for felonious assault against Mr. Littlefoot was supported by competent, credible evidence, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice in convicting Mr. McCalister of felonious assault for the injury to Mr. Littlefoot.
 {¶ 19} Mr. McCalister's two convictions for felonious assault were not against the manifest weight of the evidence. Mr. McCalister's second assignment of error is without merit and is overruled.
 {¶ 20} The judgment of the trial court is affirmed.
FAIN, P.J. and GRADY, J., concur.